695 S.E.2d 162 (2010)
In the Matter of J.H.K. and J.D.K.
No. COA10-12.
Court of Appeals of North Carolina.
July 6, 2010.
*163 Janet K. Ledbetter, Hillsborough, for respondent-father appellant.
Mercedes O. Chut, Greensboro, for Guilford County Department of Social Services petitioner appellee.
Smith, James, Rowlett, and Cohen, by Margaret F. Rowlett, Greensboro, for Guardian ad litem appellee.
HUNTER, JR., ROBERT N., Judge.
On 18 September 2008, the trial court terminated respondent-father's ("Mike's") parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) and (6) (2007). Mike appeals the trial court's order to this Court and contends, inter alia, that the trial court erred in conducting the termination of parental rights hearing when the minor children's guardian ad litem ("GAL") was not physically present. After careful review, we hold that the minor children's appointed GAL should have attended the termination of parental rights hearing. We accordingly reverse and remand for a new termination of parental rights hearing.

BACKGROUND
On 22 January 2007, police were called to the minor children's home. Upon arrival, the police observed needles and syringes used for drugs, marijuana, and several knives on a table accessible to the minor children. Officers noted that the washing machine and master bathtub were filled with dirty water, and that there was no food in the home except for a few apples. At this time, the minor children were three and four years old, living with their biological mother ("Eva").
The next day, employees from the Guilford County Department of Social Services ("DSS") visited the home. The DSS workers observed the kitchen in disarray, trash on the floor, debris in the hallways and bedrooms, and no food in the house except for the apples. Eva was in the house when DSS arrived. The minor children were running about unsupervised, and Eva appeared to be under the influence of drugs. When the DSS workers asked Eva to submit to a drug screen, Eva stated that the test would come back positive for cocaine and marijuana. The DSS workers observed needle track marks on Eva's arms. Mike was not living with Eva at this time.
DSS placed the minor children with a family friend, and contacted Mike, who was living in a hotel. After meeting with Mike in the lobby of the hotel, DSS told Mike that one of the minor children was ill, and that the child needed to be taken to the doctor.
*164 On 25 January 2007, DSS met with Mike. At the meeting, Mike stated that he had not taken the child to the doctor. DSS workers pressed Mike on the reasons why he did not take the child in for medical attention, and Mike became "belligerent" and cursed at several DSS workers.
On 26 January 2007, DSS filed a petition to have the minor children declared neglected and dependent, and Terry Helms was appointed as the minor children's GAL on 31 January 2007. A hearing was held on 16 March 2007, and based on the events between 22 and 25 January 2007, the trial court adjudicated the minor children neglected and dependent as defined under N.C. Gen.Stat. § 7B-101 (2007). The minor children were placed in foster care following the hearing. The record shows that Ms. Helms was not present at the hearing, but she did file a report containing her recommendations to the trial court. On 19 March 2007, Mike entered into a case plan for reunification with his children that contained the following requirements: (1) participate in a substance abuse assessment and follow the recommendations, (2) secure appropriate housing, (3) complete a parenting assessment and follow recommendations, (4) participate in parenting classes, (5) participate in Family Preservation Services, (6) submit to random drug screens, and (7) comply with visitation.
A follow-up hearing was held on 8 June 2007 concerning the minor children. At the hearing, the trial court made the following findings of fact pertaining to Mike's progress on his case plan.
2. A petition was filed January 25, 2007, and Adjudication and Disposition was held on March 16, 2007, adjudicating the children neglected and dependent.
. . . .
4. The underlying issue was the ongoing substance abuse by the parents in the presence of the children.
. . . .
7. It is reported that on March 21, 2007, [Eva] suffered from 3rd degree burns as a result of [Mike] pouring rubbing alcohol on her body and setting her on fire. She was burned on 35% of her body. She was burned down the right side of her body, both legs, on a portion of her back and her hair. Her feet were very swollen as a result of the burn. She required various skin [grafts] as a result of this injury. She also reported that she remembers [Mike] trying to strangle her. [Eva] remained at [the hospital] from March 21, 2007, until March 31, 2007.
. . . .
9. [Mike] is currently incarcerated in the High Point Jail. A letter was received from him on May 22, 2007. He is currently participating in ADS through the PRIDE program. He is receiving substance abuse.
The trial court further found that Mike had participated in both substance abuse and parenting assessment as required under the case plan, but he had failed to meet any other goals in the plan. Ms. Helms did not attend the hearing, but she filed a report with the trial court recommending the minor children's further placement with their foster parents.
A Permanency Plan Review Hearing was held on 7 September 2007. Following the hearing, the trial court entered an order stating that the permanent placement plan for the minor children would be adoption with a concurrent effort made toward reunification. Ms. Helms did not attend the hearing, but she filed a report with the trial court recommending a permanent placement of adoption rather than reunification. In November 2007, Mike was released from jail, and he entered into a new case plan with DSS.
Further review hearings concerning the minor children were held on 30 November 2007, 7 March 2008, and 30 May 2008. Ms. Helms filed reports for these hearings but she did not attend. On 16 December 2008, the trial court entered orders appointing Karen Moorefield as the minor children's new GAL. At a review hearing held 17 December 2008, GAL filed no report and Karen Moorefield did not attend the hearing. On 13 March 2009, a review hearing was held; Karen Moorefield did not attend the hearing nor did she file a report with the trial court.
*165 The initial petition to terminate Mike's parental rights was filed on 15 November 2007, and a second petition was filed in July 2008. In the petition, DSS alleged that grounds existed under subsections (1), (3), and (6) of N.C.G.S. § 7B-1111(a) to terminate Mike's parental rights.
Proceedings to terminate Mike's parental rights were continued several times in 2009. On 14 and 15 July 2009 the hearing began, and after hearing the evidence, the trial court entered an order terminating Mike's parental rights making the following findings:
22. While incarcerated in the Guilford County jail, [Mike] completed the PRIDE program; participated in NA/AA classes; did not get any infractions; and was cooperative with the Guilford County Jail until he was discharged on November 2, 2007.
23. [Mike] cooperated with [DSS] by voluntarily sharing information with the social worker that he used marijuana while incarcerated. Upon release from the Guilford County jail, the father contacted [DSS] and advised that he had been released. He further advised that he would be entering the Prodigal Son Drug Treatment Program on November 5, 2007 at 10:00 a.m.
. . . .
25. Following his release from jail and placement on supervised probation, [Mike] began receiving services for his substance abuse issues in a residential drug treatment facility on November 2, 2008, at the Christian Counseling and Wellness Group. This is a possible two year program but can be completed in 12 months.
26. [Mike's] case plan was updated to include the condition that he would participate in the Christian Counseling Wellness Group.
27. During the time [Mike] was in the Christian Counseling Wellness Group, he was in substantial compliance with the case plan as he [was] residing at this facility, he was submitting to drug screens, which were negative, and he obtained a substance abuse assessment through the facility. In addition, he was visiting with the children. He did not participate in a parenting psychological assessment. He began parenting classes but did not complete the program.
28. In March of 2008, [Mike] left the [Christian] Counseling Wellness Group without successfully completing the program.
29. After leaving this program, [Mike] did not maintain any contact with [DSS], he did not submit to any drug screens and did not remain case plan.
30. [Mike] has not visited with the minor children since leaving the residential drug treatment facility on March 25, 2008.
31. In June, 2008, [Mike] was arrested for violating his probation. He did not contact DSS and let them know of his incarceration. [Mike] admitted to a willful violation of his probation and took an active sentence in September, 2008.
. . . .
36. Since the minor children came into custody, [Mike] does well and addresses his substance abuse issues only while incarcerated or in residential treatment.
37. During the 2 ½ years or 30 months the children have been in foster care, both parents have had periods of recovery and then relapse and have not had a period of recovery of any significant length in which any substantial progress was made such that the children could be returned to them on even a trial basis.
38. During the 2 ½ years the children have been in foster care, both parents have committed criminal charges and the father has willfully violated probation. Each parent has had periods of incarceration in which they are unable to care [for] or even see their children.
. . . .

*166 40. Both parents knew of the petitions to terminate their parental rights. Due to the petitions being put on hold, both parents had [a] substantial amount of time to work on their substance abuse, work on their case plan and show they were able to provide a home and proper supervision for their children, but both parents failed to do so within the 30 months the children have been in foster care.
. . . .
42. There is a probability of a repetition of neglect if the minor children are returned to [Mike] as he remains incarcerated on charges which occurred after the children were placed in foster care, he relapsed within four months of his release from jail in 2008 and he has not successfully addressed his substance abuse issues except during incarceration or a residential drug treatment program and that was for a period of only four months.
Based on these findings, the trial court found that grounds existed to terminate Mike's parental rights under subsections (1) and (6) of N.C.G.S. § 7B-1111(a). The trial court further found that it was in the best interests of the minor children to terminate Mike's parental rights. Karen Moorefield filed a two-page report with the trial court in support of terminating Mike's parental rights, but she was not present at any of the termination of parental rights proceedings. Mike filed a timely notice of appeal.

ANALYSIS
Citing In re R.A.H., 171 N.C.App. 427, 614 S.E.2d 382 (2005), Mike argues that N.C. Gen.Stat. §§ 7B-601, -1108 (2007) mandate a GAL's attendance at a termination of parental rights hearing, and that in this case the trial court erred by conducting the hearing without the minor children's GAL being present. We agree.
Section 7B-601 of our General Statutes states:
When in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile. ... The juvenile is a party in all actions under this Subchapter.... The duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile, until formally relieved of the responsibility by the court.
N.C.G.S. § 7B-601(a) (emphasis added). Section 7B-1108(b) provides that if a parent's response to a petition to terminate parental rights "denies any material allegation of the petition[,] ... the court shall appoint a guardian ad litem for the juvenile to represent the best interests of the juvenile, unless... a guardian ad litem has already been appointed pursuant to G.S. 7B-601." N.C.G.S. § 7B-1108(b) (emphasis added). If a GAL has already been appointed pursuant to section 7B-601 and appointment of a GAL is also appropriate under section 7B-1108, section 7B-1108(d) further requires:
the guardian ad litem appointed under G.S. 7B-601, and any attorney appointed to assist that guardian, shall also represent the juvenile in all proceedings under this Article and shall have the duties and payment of a guardian ad litem appointed under this section, unless the court determines that the best interests of the juvenile require otherwise.
N.C.G.S. § 7B-1108(d) (emphasis added).
This Court examined these statutes in R.A.H., and held that the failure of the trial court to appoint a GAL prior to the termination of parental rights hearing was prejudicial error. R.A.H., 171 N.C.App. at 432, 614 S.E.2d at 385. In that case, no GAL was appointed pursuant to section 7B-601 upon the filing of a petition of neglect. Id. at 430, 614 S.E.2d at 384. Over five months later, when the termination of parental rights hearing *167 began, the minor child still had no GAL representation, and a GAL was not appointed until three and a half days into the termination of parental rights hearing. Id. In reversing and remanding the case for a new hearing, we observed:
In the instant case, the trial court made a valiant effort to correct the error and proceed with the termination hearing by appointing a guardian ad litem immediately once the error was brought to its attention, and offering the newly appointed guardian ad litem the option of recalling witnesses and postponing further hearings in the matter. However, because our polar star in these proceedings is the best interests of the child, we must presume prejudice where, as here, a child was not represented by a guardian ad litem at a critical stage of the termination proceedings. This is particularly so in light of the fact that the minor child is not capable of understanding and protecting its own rights and interests.
Id. at 431-32, 614 S.E.2d at 385 (citation omitted) (emphasis added).
In this case, the minor children were first appointed a GAL following the petition alleging neglect under section 7B-601. From the time of this first appointment through the termination of Mike's parental rights, Terry Helms, or a properly substituted GAL, was responsible for being the minor children's representative. See N.C.G.S. §§ 7B-601, -1108. The minor children were parties in all the hearings taking place in this case prior to the petition to terminate Mike's parental rights. N.C.G.S. § 7B-601(a). After the petition was filed to terminate Mike's parental rights and Mike filed a response, section 7B-1108 mandated that a GAL "represent the [minor children] in all proceedings [.]" N.C.G.S. § 7B-1108(d) (emphasis added).
As we noted in R.A.H., minor children are not capable of protecting their own rights and interests, and an attorney advocate is not a sufficient substitute to fill the particular role performed by a GAL. R.A.H., 171 N.C.App. at 431, 614 S.E.2d at 385 ("The functions of the guardian ad litem and the attorney advocate are not sufficiently similar to allow one to `pinch hit' for the other when the best interest of a juvenile is at stake."). Thus, we do not believe that the General Assembly intended the term "represent" to merely require a GAL to prepare a report for the trial court to be submitted at the termination of parental rights hearing in lieu of actually appearing in the courtroom.
"Represent" means "[t]o serve as the official and authorized delegate or agent for" or "[t]o act as a spokesman for," The American Heritage Dictionary 1049 (2d ed. 1985); and the word is characterized as "[t]he act or an instance of standing for or acting on behalf of another[.]" Black's Law Dictionary 1328 (8th ed. 2004). Applying these definitions to sections 7B-601 and 7B-1108, it is apparent that these statutes require a GAL to "act" and be a "spokesman" for: (1) the minor child's health, safety, and welfare outside the courtroom; and (2) the minor child's best interests in the courtroom. See N.C.G.S. §§ 7B-601, -1108. Inside the courtroom, the GAL has a duty "to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; [and] ... to report to the court when the needs of the juvenile are not being met[.]" N.C.G.S. § 7B-601(a) (emphasis added). When a petition to terminate parental rights is filed and disputed by the parent, GALs are required to "represent the juvenile in all proceedings[.]" N.C.G.S. § 7B-1108(d).
Looking at these statutory duties, it is patently clear that a GAL's representation goes far beyond a written report addressed to the trial court at a termination of parental rights hearing. The GAL is obligated to be an active "agent" inside the courtroom and to vigorously promote a minor child's best interests. Given that a minor child is a party in all proceedings under section 7B-601, a GAL needs to be intimately familiar with a minor child's case, and be present to offer evidence, examine witnesses, explore options, and report to the trial court when a minor child's case comes on for a hearing. N.C.G.S. § 7B-601(a). When a petition to terminate parental rights is filed against a minor child's parent, the GAL is required to be an "agent" and a "spokesman" for a minor child's best *168 interests in "all proceedings." N.C.G.S. § 7B-1108(d). We can imagine no set of circumstances in which a GAL can be an agent satisfactorily performing these duties without being present in the courtroom when a minor child's fate is being determined in the trial court.
The fundamental premise underlying our holding in R.A.H. was that a minor child needs GAL representation at every "critical stage of the termination proceedings." R.A.H., 171 N.C.App. at 431, 614 S.E.2d at 385. Here, we can conceive of no weightier "critical stage" than the severance of a minor child's bond with his or her biological parent. It is at these most tender moments that a minor child needs the person charged with actively promoting their best intereststheir representative. The plain meaning of "represent" includes an element of physical presence under sections 7B-601 and 7B-1108, and we conclude that these statutes mandate a GAL's physical presence at a termination of parental rights hearing. Since the minor children's GAL in this case did not attend the termination of parental rights hearing pursuant to section 7B-1008, we must presume prejudice as this Court did in R.A.H.[1]R.A.H., 171 N.C.App. at 431, 614 S.E.2d at 385 ("[W]e must presume prejudice where, as here, a child was not represented by a guardian ad litem at a critical stage of the termination proceedings."). Accordingly, we reverse, and remand this case for a new hearing to be conducted with the minor children's GAL in attendance.
Reversed and remanded.
Judges McGEE and STROUD concur.
NOTES
[1] Appellee Guardian ad litem argues that Mike waived this argument, and therefore review here is not proper under Rule 10 of the North Carolina Rules of Appellate Procedure. This Court, however, has held that section 7B-1108 is "intended to protect the best interests of the child," and that a parent's failure to object under this statute will not preclude appellate review. In re J.L.S., 168 N.C.App. 721, 723, 608 S.E.2d 823, 825 (2005); see In re Fuller, 144 N.C.App. 620, 622, 548 S.E.2d 569, 570-71 (2001). Though these cases deal with the consequences of failure to appoint a GAL instead of the GAL's failure to attend a hearing, we find the reasoning of these cases to be applicable to the case sub judice. Appellee's argument is therefore overruled.